UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALLISON KRUSE,

    Plaintiff,

v.                                                Case No: 8:20-cv-2305-CEH-JSS

SAM'S WEST, INC.,

    Defendant.
_____/

## **ORDER**

This cause comes before the Court upon Plaintiff's Motion to Remand (Doc. 6) and Defendant's Response in Opposition to Plaintiff's Motion to Remand (Doc. 14).

In removing this action, Sam's West, Inc. claimed that the amount in controversy exceeded $75,000 based upon Allison Kruse's allegations and requests for back pay, front pay, compensatory damages, punitive damages, and attorney's fees. But now Kruse challenges the removal as plagued with speculation, rife with improper calculations, and lacking sufficient support. Kruse argues that the Court must remand the action. For the foregoing reasons, the Court will grant the Motion to Remand.

### I.    BACKGROUND

After Allison Kruse's promotion at Sam's West, Inc., her supervisor allegedly commented on her breasts and buttocks, told her that she owed him, and asked her to meet up with him in a parking lot. Doc. 1-1 ¶¶10, 16. Faced with pressure from this supervisor and a fear of losing her job, Kruse engaged in sexual intercourse with him.

*Id.* at ¶17. According to Kruse, her supervisor told her that these sexual acts would ensure her continued employment. *Id.* To that end, Kruse claims that he requested sexual photographs, sought more contact with her, and forced her to have sexual intercourse with him. *Id.* at ¶18. After she told her supervisor that she would no longer engage in sexual activity with him, she alleges, he retaliated by demoting her and scheduling her to work undesirable shifts. *Id.* at ¶¶20–21. Kruse could not complain to her general manager because he was good friends with her supervisor. *Id.* at ¶20. Beginning in January of 2020, she allegedly took time off work as a result of the effects from these experiences. *Id.* at ¶22.

Kruse now sues Sam's West for sexual harassment and retaliation under the Florida Civil Rights Act of 1992. *Id.* at ¶¶26–39. Among other requested relief, she seeks: compensatory damages, including emotional distress; compensation for lost wages, benefits, and other remuneration; back pay, plus interest, pension rights, and benefits; front pay; punitive damages; and all costs and attorney's fees. *Id.* at 5–6. She claims damages in excess of $30,000. *Id.* at ¶1.

Predicating subject matter jurisdiction on diversity jurisdiction, Sam's West removed the action. In addressing the amount in controversy, Sam's West contends that a "plain reading" of Kruse's complaint and the "jurisdictional allegations" in the removal notice demonstrate that this action places more than $75,000 in controversy.[1]

---

[1] A prior order directed Sam's West to show cause as to why the Court should not remand the action as a result of Sam's failure to establish complete diversity of citizenship between the parties. Doc. 18 at 4. Sam's West responded to that order. Docs. 20, 21. However, given the analysis here, the Court need not address the sufficiency of that response.

Doc. 1 at 4. In support, Sam's West focuses on Kruse's requests for back pay, front pay, compensatory damages, punitive damages, and attorney's fees. *Id.* at 5–9.

Kruse moves to remand. Doc. 6 at 10. She argues that Sam's West improperly calculates back pay damages, speculates about her attorney's fees, and fails to provide the requisite support for its calculations of her compensatory damages, punitive damages, and front pay. *Id.* at 4–11. In response, Sam's West doubles down, claiming that the amount in controversy exceeds $75,000. Doc. 14 at 7–18.

## II. LEGAL STANDARD

A defendant may remove a civil action from state court to the district court of the United States for the district and division within which the action pends, as long as the district court has jurisdiction. 28 U.S.C. § 1441(a). District courts have original jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). In the removal context, a defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Courts measure the amount in controversy at the time of removal. *Pretka v. Kolter City Plaza II*, 608 F.3d 744, 751 (11th Cir. 2010).

"If a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotations and

alteration omitted). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. BestBuy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "[W]ithout facts or specific allegations," divining the amount in controversy by "looking at the stars"—only through speculation—is "impermissible." *Pretka*, 608 F.3d at 763–54 (internal quotation marks omitted) (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1209, 1215 (11th Cir. 2007). However, district courts may "make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Roe*, 613 F.3d at 1061–62 (internal quotation marks omitted); *see Pretka*, 608 F.3d at 754 (stating that a removing defendant who offers "specific factual allegations establishing jurisdiction (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" does not engage in "conjecture, speculation, or star gazing"). Indeed, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062.

### III. ANALYSIS

In removing this action, Sam's West asserts that the amount in controversy exceeds $75,000. Doc. 1 at 3. Kruse's only indication about the amount of damages sought is her allegation that she seeks an amount in excess of $30,000. Doc. 1-1 ¶1. As

such, it is not facially apparent from the complaint that the amount in controversy exceeds $75,000.

In the Notice of Removal, Sam's West highlights Kruse's allegations and points out that based on those allegations, Kruse seeks the following damages: (1) compensation for lost wages and benefits; (2) front pay; (3) compensation damages, including emotional distress; (4) punitive damages; (5) prejudgment interest; and (6) all costs and attorney's fees incurred. Doc. 1 at 4–5. The FCRA allows recovery of back pay, "compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and other intangible injuries," punitive damages, and attorney's fees. Fla. Stat. § 760.11(5). Kruse challenges the calculations of, and support for, the damages, arguing that the Court must remand this action because Sam's West fails to demonstrate that the amount in controversy exceeds $75,000. Doc. 6 at 3–10. The Court agrees.

**A. Back Pay**

Sam's West states in the Notice of Removal that Kruse could recover $75,600 in back pay in this action. Sam's West multiplies Kruse's $21 per hour wage—Sam's West asks the Court to rely upon its word for this proposition—by an assumed 40 hours per week and multiplies that sum by the 38 weeks that passed between Kruse's departure in January of 2020 and the removal. Doc. 1 at 6. This calculation yields approximately $31,920.[2] *Id.* The calculations do not stop there: Sam's West then adds

---

[2] Sam's West explains that this amount does not include "the value of any benefits," but fails to offer any explanation or calculation for the value of those benefits. Doc. 1 at 6.

an additional 52 weeks of back pay "to account for the expected time between [removal] and trial," thereby producing $75,600. *Id.* at 7. Kruse concedes that the amount of her back pay at the time of removal was "approximately $32,000," but argues that Sam's West improperly calculates back pay through a hypothetical trial date one year from the date of removal. Doc. 6 at 4–5, 7. In response, Sam's West reiterates that the Court should calculate back pay through a proposed trial date one year from removal and claims that Kruse's back pay increased by $1,680 from the date of removal to the date of the response in opposition. Doc. 14 at 7–9.

Courts within this District disagree on whether the amount in controversy should include back pay that accrues after removal through trial or judgment.[3] *Balkum v. Pier 1 Imports (U.S.), Inc.*, No. 6:17-cv-1299-Orl-37DCI, 2017 WL 3911560, at *2 (M.D. Fla. Sept. 7, 2017). While some courts calculate back pay damages through proposed trial dates, *see, e.g., Pope v. 20/20 Commc'ns, Inc.*, No. 8:15-cv-1774-30JSS, 2015 WL 5165223, at *2 (M.D. Fla. Sept. 2, 2015), others persuasively consider back

---

[3] Sam's West relies upon *Wineberger v. Racetrac Petroleum, Inc.*, 672 F. App'x 914 (11th Cir. 2016), to argue that the Eleventh Circuit has "approved calculating back pay through the estimated time of trial" for determining the amount in controversy, Doc. 1 at 6, and claims that estimating back pay damages through trial is proper, Doc. 14 at 7. In *Wineberger*, the Eleventh Circuit reviewed the district court's jurisdictional findings of fact under the highly deferential "clear error" standard of review. 672 F. App'x at 916. Under this highly deferential standard, the court rejected the plaintiff-appellant's challenges to the district court's amount in controversy calculations, noting, in relevant part, that the district court had estimated $43,289 in back pay after reviewing comparable FCRA cases, the defendant's evidence and calculations, and the plaintiff's lack of mitigating evidence suggesting alternate calculations. *Id.* at 917. As an unpublished opinion, *Wineberger* is not binding on the Court. 11th Cir. R. 36-2. Also, *Wineberger* does not suggest that the Court must abide by that district court's method of calculating the amount in controversy. *Vanterpool v. Amazon.com.Dedc, LLC*, No. 8:17-cv-1347-T-33MAP, 2017 WL 2609551, at *2 (M.D. Fla. June 16, 2017).

pay damages only to the date of removal on the basis that Eleventh Circuit precedent requires courts to ascertain the amount in controversy at the time of removal, *see*, *e.g.*, *Balkum*, 2017 WL 3911560, at *2; *Bragg v. Suntrust Bank*, No. 8:16-cv-139-VMC-TBM, 2016 WL 836692, at *2 (M.D. Fla. Mar. 4, 2016); *Scott v. Walmart, Inc.*, No. 8:20-cv-2807-KKM-CPT, 2021 WL 1016133, at *4 (M.D. Fla. Mar. 17, 2021); *see also Ogle v. Kauffman Tire, Inc.*, No. 8:16-cv-894-EAK-TBM, 2016 WL 3913138, at *2 (M.D. Fla. July 20, 2016) ("The amount of back pay damages is to be determined at the time of the removal not some made up date in the future that gets the Defendant where it wants to be, without the basis being established as reasonable.").

Because the law requires courts to determine the amount in controversy at the time of removal, the Court declines to consider back pay that has accrued, or will accrue, after removal. Although the Court may use "deduction, inference, or other extrapolation" in ascertaining the amount in controversy, *see Pretka*, 608 F.3d at 753–54, this recognition does not provide license "for throwing a dart at a future trial calendar" to determine back pay, *Balkum*, 2017 WL 3911560, at *2. Indeed, "most cases settle before trial." *Cole v. Gen. Parts Distrib., LLC*, No. , 2018 WL 3216118, at *2 (S.D. Fla. Feb. 9, 2018) ("[C]alculating the amount of back pay through the trial date requires a court to engage in a great deal of impermissible speculation."); *see Bragg*, 2016 WL 836692, at *2 (emphasizing the "possible . . . if not probable" resolution of the action without a trial and declining to base jurisdiction upon "the calculation of back pay up to the date of a trial that may never occur"). Thus, the back pay calculation

7

offered by Sam's West impermissibly extends beyond the date of removal and invites the Court to engage in speculation and guesswork.

As Sam's West indicates that Kruse's back pay at the time of removal was $31,920 and Kruse concedes that her back pay was "approximately $32,000" at the time of removal, Doc. 6 at 7, the Court will treat this $31,920 amount as Kruse's back pay at the time of removal.[4] However, as articulated below, Sam's West still falls short of demonstrating that the amount in controversy exceeds $75,000, exclusive of interest and costs.

### B. Front Pay

Sam's West also states in the Notice of Removal that front pay "further augments the amount of lost wages in this action." Doc. 1 at 7. As such, Sam's West adds $43,680 to the amount in controversy, which supposedly represents one year of front pay at $21 per hour for 40 hours per week for 52 weeks. *Id.* Kruse challenges this inclusion of front pay as grounded in speculation. Doc. 6 at 8–9. Sam's West responds that accounting for front pay in determining the amount in controversy is proper and that Kruse fails to demonstrate otherwise. Doc. 14 at 10.

Preliminarily, "front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."

---

[4] Kruse also claims that Sam's West fails to consider her likely mitigation of damages prior to a future trial date. Doc. 6 at 5–6. However, Kruse does not provide any information regarding her mitigation efforts. Given the recognition that the Court must analyze the amount in controversy at the time of removal and the analysis in this order, any mitigation does not alter the Court's conclusions.

*Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). The FCRA "does not explicitly authorize a recovery of front pay . . . . reinstatement, or any comparable equitable relief . . . ." *Scott*, 2021 WL 1016133, at *5 (citing Fla. Stat. § 760.11(5)). The principal cases cited by Sam's West for its front pay argument involved causes of action distinct from the FCRA. *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349 (11th Cir. 2000) (analyzing an award of front pay under the Age Discrimination in Employment Act); *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000) (articulating prevailing Title VII plaintiffs' presumptive entitlement to reinstatement or front pay); *Brown v. Cunningham Lindsay U.S., Inc.*, No. 3:05-cv-141-J-32HTS, 2005 WL 1126670, at *5 (M.D. Fla. May 11, 2005) (same). At least one Florida court has upheld a front pay award under the FCRA. *Haines City HMA, Inc. v. Carter*, 948 So. 2d 904, 905 (Fla. 2d DCA 2007).

Regardless, even when assuming that the FCRA authorizes recovery of front pay, Sam's West fails to offer a cogent basis for including the requested front pay sum in the amount in controversy. Citing to distinguishable cases, Sam's West concludes that the Court must include an amount of front pay measured by an assumed rate of pay ($21 per hour) and an assumed duration (40 hours per week for 52 weeks).[5] One

---

[5] Sam's West relies upon *Wineberger* here for the proposition that the Eleventh Circuit "approv[ed] inclusion of one year of front pay in the amount in controversy calculation under [the] FCRA." Doc 1 at 7; Doc 14 at 10. Again, the Eleventh Circuit reviewed the district court's jurisdictional findings of fact under the highly deferential "clear error" standard of review. *Wineberger*, 672 F. App'x at 916. The district court had estimated the plaintiff's front pay as $12,670 upon removal after reviewing comparable FCRA cases, the defendant's evidence and calculations, and the plaintiff's lack of mitigating evidence. *Id.* at 917. As previously explained, this case is not binding upon the Court. 11th Cir. R. 36-2.

year necessarily extends beyond the time of removal, but the Court must measure the amount in controversy at the time of removal. *Pretka*, 608 F.3d at 751. Sam's West does not explain why including one year of front pay is appropriate in this action. *See Vanterpool*, 2017 WL 2609551, at *2 (declining to include front pay in the amount in controversy where the defendant failed to provide any information explaining the basis for including a year of front pay). The front pay calculation offered by Sam's West invites the Court to engage in impermissible speculation. *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (emphasizing that the value of injunctive relief must be "'sufficiently measurable and certain'" to satisfy the amount in controversy). A "legion of tribunals" in this District has held that "speculation regarding front pay cannot be used to supplement insufficient back pay" to meet the amount in controversy threshold of diversity jurisdiction. *Mavaddat v. Cracker Barrel Old Country Store, Inc.*, No. 8:15-cv-1701-T-33JSS, 2015 WL 5897520, at *2 (M.D. Fla. Oct. 7, 2015). Therefore, Sam's West fails to demonstrate by a preponderance of the evidence that the requested front pay amount should be included in the amount in controversy. The Court will not "augment" the amount in controversy with speculative front pay calculations.

### C. Compensatory Damages

Next, Sam's West asserts that "district courts routinely include compensatory damages in the form of pain and suffering, which [Kruse] seeks in this case, in the jurisdictional amount as well." Doc. 1 at 7. On that basis, Sam's West includes $15,000—labeled a "conservative estimate"—of emotional distress damages in the

amount in controversy. *Id.* Kruse argues that Sam's West fails to provide any specific details about this action, compare the facts with other actions, or supply evidence to justify this proposed amount of compensatory damages. Doc. 6 at 7–9. Kruse describes the compensatory damages calculation as speculative. *Id.* at 9. Sam's West counters that Kruse's allegations demonstrate that she seeks compensatory damages "well beyond the garden-variety." Doc. 14 at 11. In addition to arguing that the law does not require Kruse to plead a specific amount of emotional distress damages for the Court to include those damages in the amount in controversy, Sam's West urges the Court to use judicial experience to value Kruse's claim for emotional distress damages at $25,000 (a $10,000 increase from the $15,000 alleged in the Notice of Removal). *Id.* at 12–13.

Kruse persuasively highlights flaws with the compensatory damages analysis. Despite claiming in the Notice of Removal that $15,000 is a "conservative estimate" of Kruse's emotional distress damages, Sam's West fails to offer any supporting facts or demonstrate the calculations behind that amount. *See Williams*, 269 F.3d at 1319–20. ("A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden."). Instead, Sam's West predicates the support for this calculation upon citations to cases in which other courts included compensatory damages in the amount in controversy.[6] However, Sam's West fails to

---

[6] Relying upon *Munoz v. Oceanside Resorts, Inc.*, Sam's West also argues that the Eleventh Circuit does not require objective medical testimony to support an award of emotional distress

11

explain whether these cited cases are comparable to this action. Even if the Court treats those cases as "comparable" cases, Sam's West does not explain why the compensatory damages in those cases justify including $15,000 in the amount in controversy here. *See, e.g.*, *Bragg*, 2016 WL 836692, at *2 (rejecting the defendant's argument that the court could reasonably anticipate the compensatory damages exceeding $75,000 where the defendant failed to explain why cases awarding $75,000 for mental anguish justified such an award); *Balkum*, 2017 WL 3911560, at *3 (rejecting the defendant's reliance upon FCRA cases in which the plaintiffs received $75,000 or more in compensatory damages); *Quintano v. Fogo De Chao Churrascaria (Orlando) LLC*, No. 6:17-cv-1168-RBD-KRS, 2017 WL 3263101, at *3 (M.D. Fla. Aug. 1, 2017) (same). Consequently, Sam's West invites the Court to speculate about the compensatory damages. The Court declines this invitation. *See Quintano*, 2017 WL 3263101, at *3 (declining to consider compensatory damages in the amount in controversy where the defendant could only speculate about the amount of those damages).

The response in opposition to the Motion to Remand fails to cure these deficiencies. Although Sam's West highlights that Kruse alleges that she was forced to

---

damages under the FCRA and that a plaintiff's lay testimony about the emotional impact of illegal termination may support an award. Doc. 1 at 8 (citing 223 F.3d at 1348). In *Munoz*, the defendant-appellant challenged the plaintiff-appellee's recovery of emotional distress and dignitary injury under the FCRA, and the Eleventh Circuit concluded that the plaintiff-appellee's damages were permissible and that his testimony sufficiently justified the jury's award. *Id.* at 1348–49. *Munoz* neither addresses calculating the amount in controversy nor cures the faults with the analysis of Sam's West.

engage in sexual intercourse with her supervisor, that he threatened her with retaliation, and that she could not complain, Sam's West does not explain why the allegations justify $15,000 (or $25,000, for that matter) in compensatory damages. Sam's West also does not provide any evidentiary support for the $15,000 amount (or the $25,000 amount). The Court's use of judicial experience and common sense does not save the day for Sam's West.[7]

Therefore, because the compensatory damages offered by Sam's West are grounded in impermissible speculation, the Court will not consider those damages in determining the amount of controversy. *See Lowery*, 483 F.3d at 1215 ("The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.").

### D. Punitive Damages

Sam's West claims that the amount in controversy must include punitive damages because the FCRA allows Kruse to recover those damages. Doc. 1 at 8. "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (internal citations omitted). The FCRA caps the recovery of punitive damages at $100,000. Fla. Stat. § 760.11(5). Based on this cap, Sam's West claims that

---

[7] Similarly, the general argument of Sam's West in the response in opposition that Kruse's allegations demonstrate the "sort of egregious conduct . . . clearly show[ing]" that the amount in controversy more likely than not exceeds $75,000 is unavailing. Doc. 14 at 6–7.

Kruse's request for punitive damages by itself satisfies the amount in controversy requirement of diversity jurisdiction. Doc. 1 at 8–9. Sam's West includes $25,000 in the amount in controversy—labeled an "appropriate estimate"—based upon Kruse's allegations that she "was forced to have an ongoing sexual relationship with her supervisor" and that "she was terminated in retaliation for having attempted to complain about such unwanted sexual acts." *Id.* at 9. Kruse argues that Sam's West fails to offer any evidence or point to any underlying facts to support including the $100,000 statutory cap in the amount in controversy. Doc. 6 at 8. Kruse also argues that Sam's West fails to compare the facts, or offer evidence, of this action to cases where punitive damages were awarded. *Id.* Sam's West responds that Kruse's allegations demonstrate that she seeks punitive damages "beyond the garden variety" and that the law does not require Kruse to plead a specific amount of punitive damages for the Court to include those damages in the amount in controversy. *Id.* at 12.

The Court agrees with Kruse. First, Kruse's request for punitive damages does not "satisfy the amount in controversy" as a result of the availability of up to $100,000 in punitive damages under the FCRA. Doc. 1 at 9 (internal quotation marks omitted). "A mere request for punitive damages, which may reach a statutory maximum of $100,000, does not merit a finding that the amount in controversy has been met." *Vanterpool*, 2017 WL 2609551, at *3. *Vanterpool* persuasively reasons that following this logic would untenably result in district courts finding the amount in controversy met in every removed FCRA case requesting punitive damages. *Id.* at *3–4 (quoting *Boyd v. N. Trust Co.*, No. 8:15-cv-2928-VMC-TBM, 2016 WL 640529, at *4 (M.D. Fla.

14

Feb. 18, 2016)). As such, the Court does not consider the punitive damages cap under the FCRA in determining the amount in controversy.[8]

Second, "punitive awards are entirely dependent on the egregiousness of the particular violation" and "a great disparity in the amount of jury awards" exists in cases with FCRA claims. *Balkum*, 2017 WL 3911560, at *3. While Sam's West argues that $25,000 serves as an "appropriate estimate" of the amount that Kruse "could likely recover if the allegations are proven beyond the preponderance of the evidence" based on the allegations, Doc. 1 at 9, Sam's West neither compares Kruse's allegations to the facts of other cases involving punitive damages nor makes a specific showing supporting such an award. As a result of these omissions, Sam's West fails to prove by a preponderance of the evidence that Kruse's punitive damages total $25,000 or

---

[8] In the Notice of Removal, Sam's West indirectly cites to *McDaniel v. Fifth Third Bank*, 568 F. App'x 729 (11th Cir. 2014), in support of its punitive damages cap argument. Doc. 1 at 9. In *McDaniel*, the defendant argued on appeal that the district court erred in refusing to consider the punitive damages related to the plaintiff's fraud claims in finding that the amount in controversy fell short of the Class Action Fairness Act's threshold. *Id.* at 729–30. The Eleventh Circuit emphasized that the defendant needed only to "prove the jurisdictional facts necessary to establish that punitive damages in an amount necessary to reach the jurisdictional minimum" were at issue. *Id.* at 731. The court held that the defendant had proved those facts. *Id.* at 731. The plaintiff sought punitive damages for his Florida Consumer Collection Practices Act, common law fraud, and fraud in the inducement claims. *Id.* at 731–32. These causes of action limited punitive damages to three times the compensatory awards. *Id.* at 732. The Eleventh Circuit held that the claims established that CAFA's amount in controversy requirement was met. *Id. McDaniel*, as an unpublished opinion, is not binding. 11th Cir. R. 36-2. Also, despite indirectly citing this case, Sam's West does not explain whether, like the *McDaniel* defendant, it has proven jurisdictional facts necessary to establish that punitive damages in an amount necessary to reach the jurisdictional minimum are at issue. Finally, unlike this action, in which Kruse does not specify an amount of compensatory damages, the punitive damages under the non-FCRA causes of action in *McDaniel* were capped at three times the amount of sought compensatory damages, which the parties had identified. 568 F. App'x at 731–732.

otherwise satisfy the jurisdictional threshold. *See Lowery*, 483 F.3d at 1215; *Balkum*, 2017 WL 3911560, at *3; *Quintano*, 2017 WL 3263101, at *3.

### E. Attorney's Fees

In one sentence, Sam's West tersely states in the Notice of Removal that "there is no question that the amount in controversy well exceeds the $75,000 threshold" when adding Kruse's "claim for attorney's fees." Doc. 1 at 9. Thus, Sam's West adds Kruse's "claim for attorney's fees" into the amount in controversy calculation, but fails to quantity those fees. Kruse highlights that attaching some unknown value for attorney's fees to the amount in controversy amounts to mere speculation. Doc. 6 at 6. Kruse also contends that even if the Court includes attorney's fees in the amount in controversy, the Court may include only those fees accrued up to the date of removal. *Id.* at 7.

In response, Sam's West emphasizes that courts have considered attorney's fees in assessing the amount in controversy. Doc. 14 at 14. Sam's West also argues that district courts in the Eleventh Circuit have "accounted for the increase in attorneys' fees associated with discovery and trial and have reached the conclusion that it may be reasonable to triple that initial number which [is] based on the fees at the time of removal for purposes of calculating the amount in controversy." *Id.* at 15 (alteration in original) (internal quotation marks omitted). Sam's West offers $5,000 as an estimate of Kruse's attorney's fees at the time of the response in opposition—not the removal— and offers $15,000 as a "very conservative estimate" of Kruse's attorney's fees through trial. *Id.* at 6.

Once again, the Court agrees with Kruse. "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000). The FCRA provides for an award of attorney's fees to a prevailing party. Fla. Stat. 760.11(5). Courts must measure the amount in controversy at the time of removal. *Pretka*, 608 F.3d at 751. Consequently, most courts hold that the amount in controversy may include only those attorney's fees incurred up to the time of removal. *Mavromatis v. Geovera Specialty Ins. Co.*, No. 8:18-cv-2146-TPB-AEP, 2019 WL 3543707, at *2 (M.D. Fla. Aug. 5, 2019). Courts have also refused to consider attorney's fees as part of the amount in controversy where the removing defendant fails to provide a calculation of those fees or information necessary to calculate those accrued fees at the time of removal. *See, e.g.*, *Vanterpool*, 2017 WL 2609551, at *2; *Bragg*, 2016 WL 836692, at *3; *Scott*, 2021 WL 1016133, at *7.

Here, Sam's West claims that the amount in controversy must include an unquantified amount of attorney's fees. While the Court must measure the amount in controversy at the time of removal, Sam's West fails to distinguish between fees incurred upon removal and after removal.[9] Sam's West also fails to provide a calculation of those fees or otherwise provide the Court with information necessary to calculate those fees. As a result, the Court may ascertain the amount of attorney's fees

---

[9] Relatedly, the Court declines to triple the $5,000 estimate of Kruse's attorney's fees. A recent case persuasively rejected a similar argument, explaining that tripling attorney's fees for future work without any underlying factual allegations constituted impermissible speculation and looked beyond those fees incurred at the time of removal. *Scott*, 2021 WL 1016133, at *7.

only "'by looking at the stars—only through speculation—and that is impermissible.'" *Pretka*, 608 F.3d 753–54 (quoting *Lowery*, 483 F.3d at 1209, 1215). The Court declines to consider attorney's fees in the amount in controversy determination.

### F. Post-Suit Demand and Request for Jurisdictional Discovery

Sam's West offers two final arguments in its response in opposition to the Motion to Remand: (1) a settlement demand from Kruse, together with her allegations, demonstrates that the amount in controversy exceeds $75,000; and (2) because Kruse has not offered any evidence to contradict the position that the amount in controversy exceeds $75,000, the Court should allow the parties to "clarify the jurisdictional question" by permitting discovery aimed at determining the amount in controversy. Doc. 14 at 16–20 (internal quotation marks omitted). Each argument lacks merit.

Referencing the only evidence provided with its response in opposition to the Motion to Remand, Sam's West asserts that Kruse served a demand on Sam's West that demonstrates that the amount in controversy exceeds $75,000. *Id.* at 2, 17. According to the attached declaration, after counsel for Sam's West asked Kruse's counsel for the "most recent settlement demand," Kruse's counsel advised that Kruse "proposed entering into a bracket for settlement which, on the low end of that bracket, was well in excess of the $75,000 jurisdictional amount." Doc. 14-1 at 1.

"Settlement offers do not automatically establish the amount in controversy for purposes of diversity jurisdiction." *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, No. 3:10-cv-615-TJC-JRK, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010). Rather, courts must analyze whether demands "merely reflect puffing and posturing, or whether they

provide specific information to support the plaintiff's claim for damages and thus offer a reasonable assessment of the value of [the] claim." *Id.* (alteration in original) (internal quotation marks omitted). Here, the declaration states only that counsel for Sam's West received a demand. Sam's West does not provide any correspondence or supporting information for this demand. As such, the Court cannot assess whether the demand reflects puffing and posturing. Therefore, the Court declines to rely upon Kruse's demand in determining the amount in controversy.

Next, Sam's West contends that although Kruse challenges whether Sam's West meets its burden, she has failed to offer any evidence to contradict the argument that the amount in controversy exceeds the jurisdictional threshold. Doc. 14 at 19–20. According to Sam's West, while Kruse challenges the calculations of Sam's West, she has not provided "any specifics" about her mitigation efforts, the amounts of compensatory and punitive damages, the time her attorney has spent investigating and prosecuting her claims, or her attorney's hourly rate. *Id.* at 20. "Under such circumstances," Sam's West claims, "it is appropriate for the Court to provide the parties [with the opportunity] to clarify the jurisdictional question" by engaging in discovery targeted towards the amount in controversy. *Id.* (internal quotation marks omitted).

Thus, Sam's West premises the request for jurisdictional discovery upon Kruse's purported failure to provide "any specifics." However, as the removing party, Sam's West carries the burden of demonstrating subject matter jurisdiction. As analyzed above, Sam's West fails to carry that burden. This attempt to shift the burden to Kruse

19

does not justify jurisdictional discovery, nor is the single Middle District of Alabama case cited by Sam's West binding upon the Court. This argument fails.

## IV. CONCLUSION

Sam's West fails to demonstrate that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Lacking subject matter jurisdiction, the Court must remand this action.

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Motion to Remand (Doc. 6) is **GRANTED**.
2. This case is **REMANDED** to the Twelfth Judicial Circuit, in and for Manatee County, Florida.
3. The Clerk is directed to send a certified copy of this order to the Clerk of the Court for the Twelfth Judicial Circuit, Manatee County, Florida.
4. The Clerk is further directed to terminate all pending motions and deadlines and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on June 25, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any